## Case No. 15,312.

### UNITED STATES v. HARRIS.

[Abb. U. S. 110; [1] 5 Int. Rev. Rec. 21.]

District Court, D. Kentucky. March Term, 1866.

POWERS OF THE PRESIDENT — REMISSION OF FORFEITURES.

1. After a judgment in proceedings for a fine, penalty, or forfeiture has been rendered, by which a moiety thereof has become vested in an informer or other individual, it is not within the power of the president by a pardon to remit or release the moiety thus accruing to the individual. His power is limited to a remission of the share of the government only. So *held*, where the conviction took place before the enactment of section 9 of the internal revenue act of July 13, 1866 (14 Stat. 146).

[Disapproved in U. S. v. Thomasson, Case No. 16,479. Cited in Pollock v. The Laura, 5 Fed. 136; The Laura, 8 Fed. 615; U. S. v. Griswold, 24 Fed. 365; Re Jayne, 28 Fed. 422.]

2. It seems, that before judgment, where the prosecution is wholly in the name of the United States, the president has complete power over the whole case.

Motion for payment out of funds in court.

Thomas B. Farleigh, for the motion.

B. H. Bristow, U. S. Dist. Atty.

BALLARD, District Judge. On March 15, 1866, J. G. Harris was convicted of having in his possession merchandise subject to duty for the purpose of selling the same with the design of avoiding the payment of duties imposed thereon, and also of the offense of selling cigars, not being the manufacturer thereof, upon which the duties imposed by law had not been paid, with the knowledge thereof.

On the same day, the court rendered judgment against the convict, that he pay a fine to the United States of five hundred dollars on account of the first offense, and one hundred dollars for the second offense, in all six hundred dollars.

On the motion of the district-attorney, the convict was not committed to prison until the fine should be paid, but a capias was awarded against him.

On the next day, March 16, John M. Hewitt was, by the judgment of the court, ascertained to be the first informer of the matters whereby the fine imposed on account of the first offense was incurred, and the judgment rendered on the day previous was so far modified that one moiety of said fine, to wit, two hundred and fifty dollars, was adjudged to be for the use of said Hewitt, and the remainder for the use of the United States.

On April 15, the president of the United

[1] [Reported by Benjamin Vaughan Abbott, Esq., and here reprinted by permission.]

States, by his deed of pardon, which recites that the said Harris had been "sentenced to pay a fine of six hundred dollars," remitted to him the payment of two-thirds of the same.

The marshal, who at this time had in his hands said capias, assuming that the pardon was fully effective to discharge, according to its tenor, the defendant from the payment of four hundred dollars of said fine, and that the defendant had a right, under the laws of the state of Kentucky, which have been adopted by the United States, to replevy the judgment, allowed the defendant to give his bond, with Walter C. Whittaker and others, sureties, dated May 14, whereby the parties undertook to pay, three months after date, two hundred and fifty-three dollars, with interest from date. This sum is just equal to one-third of the fine and the costs of prosecution. This bond was subsequently satisfied by the payment into court, on December 17, of two hundred and sixty-one dollars and forty cents.

And now R. M. Moseby, the assignee of the informer, has moved the court that the whole sum adjudged to the informer by the judgment of March 16, 1866, be paid to him out of the fund in court, with interest from May 14, the date of the replevin bond.

This motion assumes for its basis that the president had no right to remit any portion of the fine previously adjudged to the informer, and that the informer is therefore entitled to his whole share, just as if no remission had taken place.

The question presented by this motion is an exceedingly interesting and important one. It involves a consideration of the power of the president, under the constitution of the United States, to remit fines, and, so far as I am informed, it has never been determined by either the supreme court or by any circuit court of the United States. I would, therefore, gladly avoid its decision if I could; but every view which I take of the motion submitted only confirms me in the conviction that the question suggested is directly involved, and that its determination can in no way be shunned. But whilst I approach its consideration with unfeigned diffidence, fully impressed with the responsibility which every judge must feel when he is obliged to determine any matter concerning the limit which the constitution has imposed on any department of the government, I have no disposition to shrink from the performance of a duty which I conceive is clearly enjoined on me. Without, therefore, any further apology, I proceed to announce the conclusion to which I have arrived, and to assign some of the reasons on which it is founded.

By section 41 of the act of June 30, 1864 [13 Stat. 223], commonly called the internal revenue act, under which this conviction was had, it is provided that "all fines, penalties, and forfeitures which may be incurred or

imposed by virtue of this act, shall be sued for and recovered in the name of the United States, in any proper form of action, or by any appropriate form of proceeding: . . . . and when not otherwise or differently provided for, one moiety thereof shall be to the use of the United States, and the other moiety to the use of the person, to be ascertained by the judgment of the court, who shall first inform of the cause, matter, or thing whereby any such fine, penalty, or forfeiture was incurred." A similar provision is also to be found in section 179.

It has already been stated that by judgment of this court, rendered March 16, 1866, John M. Hewitt was ascertained to be the person who first informed of the matter, whereby the fine of five hundred dollars was incurred, and that one moiety thereof was then adjudged to him. Did this judgment so vest this moiety in him that it could not be, or rather was not, divested or impaired by the pardon of the president? This is the question which I now proceed to consider. By section 2 of article 2 of the constitution of the United States, it is declared that "the president . . . shall have power to grant reprieves and pardons for offenses against the United States, except in cases of impeachment." This language is less explicit than that employed in the constitution of Kentucky, and in the constitutions of other states, to confer a like power on the governor. In this, and in other states, the governor is expressly empowered to remit fines and forfeitures, as well as to grant reprieves and pardons. But, although this difference of language might have led to a difference of construction in respect to the extent of the power intended to be conferred, and might have resulted in denying to the president the power of remitting either fines or forfeitures, such, in fact, has not been its effect, for it may be considered as settled that the power of pardon in the president embraces all offenses against the United States, except cases of impeachment, and includes the power of remitting fines, penalties, and forfeitures. 2 Story. Const. § 1504; U. S. v. Lancaster [Case No. 15,557]; U. S. v. Wilson, 7 Pet. [32 U. S.] 161; Ex parte Wells, 18 How. [59 U. S.] 307.

Conceding, however, that the power of pardon includes the right to remit fines and penalties, still, to understand the extent to which it may be exercised by the president, we must look to the extent of this prerogative rightfully belonging to the executive of that nation whose language we speak, and whose principles of jurisprudence the people of the United States brought with them as colonists, and established here. If the terms "pardon," "habeas corpus," "bill of attainder," "ex post facto," and other terms used in the constitution, had a well known meaning in that language, and in that system of jurisprudence, the conclusion is irresistible that the convention which framed the constitution

had reference to that meaning when it employed them, and that the people accepted them in that sense when they ratified the work of the convention. But this proposition, impregnable as it seems to be in the light of mere abstract reasoning, is doubly fortified by judicial decisions. Calder v. Bell, 3 Dall. [3 U. S.] 390; Watson v. Mercer, 8 Pet. [33 U. S.] 110; Carpenter v. Pennsylvania, 17 How. [58 U. S.] 463; U. S. v. Wilson, 7 Pet. [32 U. S.] 160. Indeed, the supreme court, in the last case cited, speaking in reference to the very matter we have now before us,—that is, the extent of the power of the president to grant pardons,—says: "As this power has been exercised from time immemorial by the executive of that nation whose language is our language, and to whose judicial institutions ours bear a close resemblance, we adopt these principles respecting the operation and effect of a pardon."

It follows from this reasoning, and from these authorities, that if the king of England cannot, under his prerogative of pardon, remit, after judgment, the share of a fine given by law to an informer, it is not within the power of the president to do it under the constitution of the United States. Indeed, it would seem absurd to suppose that either the framers of the constitution, or the people who ratified it, intended to confer on the president a power, in this respect, larger than that possessed by the sovereign of Great Britain.

Now I find that the English authorities are uniform to the effect that the king cannot make pardon to the injury or loss of others; that he cannot, by his act of grace, give away that which belongs to another; that he cannot divest a vested interest; in short, that, after an action popular, brought tam pro domino rege quam pro se ipso according to any statute, he may discharge his own share as well after as before judgment, but that, after judgment, he cannot remit the part of the informer, because, in the language of the law, this share of the informer is, by the judgment, vested in him. 3 Co. Inst. c. 105, 236–238; 2 Hawk. P. C. c. 37, p. 553; Foster's Case, 11 Coke. 65d, 66a; Vin. Abr. tit. "Prerogative" (N. a) pl. 7; 5 Com. Dig. tit. "Pardons," 245, citing Strange, 1272; Parker, 280; Cro. Car. 9, 199.

The authorities in the United States are to the same effect, though, as I have already said, the precise question here presented has never been decided. U. S. v. Lancaster [supra]; State v. Simpson, 1 Bailey, 378; State v. Williams, 1 Nott & McC. 26; In re Flournoy, 1 Kelley [Ga.] 606; State v. Farley, 8 Blackf. 229; State v. McO'Blenis, 21 Mo. 272; Ex parte McDonald, 2 Whart. 440; Duncan v. Com., 4 Serg. & R. 451; Playford v. Com., 4 Barr [4 Pa. St.] 144; The Hollen [Case No. 6,608]. In some of these cases it is expressly stated that by the common law of England, the king, in the exercise

of his prerogative of pardon, cannot remit either the share or fine awarded to an informer by the judgment of a court, or the costs of prosecution when they are adjudged to the officers of the court, and it is held that this limit also attaches to the power of pardon conferred on the governors of states by their several constitutions.

Following the mandate of these authorities, my conclusion is, that a proper interpretation of the constitution limits the power of pardon confided to the president, after a judgment ordering a portion of a fine to be paid to a private citizen, to a remission of the share of the government only, and that it is inoperative to divest an interest vested by such judgment in the citizen. What the president may do before judgment, it is, perhaps, not proper for me, in this case, to say; but when the prosecution is wholly in the name of the United States, I see nothing in the foregoing authorities which would deny him complete power over the whole case; for although the cases of Jones v. Shore, 1 Wheat. [14 U. S.] 670, and Van Ness v. Buell, 4 Wheat. [17 U. S.] 74, suggest that the informer has a right which attaches on seizure, or at least on the institution of a prosecution, they admit that this right is only inchoate, and is not consummated or vested until judgment.

I have not overlooked the decision of the supreme court in the case of U. S. v. Morris, 10 Wheat. [23 U. S.] 246, in which it is held that the secretary of the treasury, under the power conferred on him by the act of 1797 [1 Stat. 506], to remit fines, penalties and forfeitures, may remit, after judgment, the share of the informer, as well as the share of the United States. But it will be seen by reference to the opinion of the court, that they regard this power, conferred by act of congress on the secretary, as materially distinguishable from the power of pardon conferred on the president by the constitution. The secretary, by the terms of the act, can remit only where the penalty "shall have been incurred without willful negligence or any intention of fraud;" and is, therefore, authorized to administer a sort of equitable relief,—that is, to relieve where, in justice and equity, no penalty should be paid. But the power of the president proceeds on no such principle. He may pardon whom he will, and wholly without respect to the moral guilt or innocence of the legal offender. Moreover, the court rest their decision on the ground that the statute expressly confers on the secretary the power claimed; and recognizing the maxim "Cujus est donare ejus est disponere," they consider that there can be no question that congress, which gives the right to the informer, may, in its discretion, provide upon what conditions it may be enjoyed or taken away.

Nor have I overlooked the provisions of section 9 of the amended internal revenue act of 1866 (14 Stat. 146), which assert that "it is hereby declared to be the true intent and meaning of the present and all previous provisions of internal revenue acts granting shares to informers, that no right accrues to or is vested in any informer in any case until the fine, penalty, or forfeiture in such case is fixed by judgment or compromise, and the amount or proceeds shall have been paid, when the informer shall become entitled to his legal share of the sum adjudged or agreed upon and received."

Whatever may be the effect of these provisions in cases arising under this act, it is manifest they cannot affect rights vested previous to their adoption under the law as it then existed. If more was meant by these provisions than to change existing laws; if they were intended to furnish to the courts a rule for the interpretation of previous statutes, I cannot admit their binding force to this extent. It is the province of congress to make laws, not interpret them. Their interpretation, when made, is confided by the constitution to the judiciary.

Nor has the decision of the court of appeals of this state, in the case of Routt v. Feemster, 7 J. J. Marsh. 132, escaped my attention. That decision has been understood by some to hold that the governor may remit the share of the citizen in a fine. It will, however, be seen that the case goes only to this extent, that the governor may remit the whole fine, including the portion given by law to the commonwealth's attorney, because by the terms of the statute he is entitled to nothing until the fine is collected. But if the decisions of the courts in this state are to control my decision in this case, it may be well to refer to the case of Frazier v. Com., 12 B. Mon. 369, in which it is held that when the governor remits less than half of the fine, or more than half, the part not remitted, to the extent of not more than half, should be paid to the attorney of the commonwealth. This is an express authority for giving the whole of the fine collected in this case to the informer.

It is due to the president to say that it is very apparent, from the terms of the pardon granted by him, he was not aware that any portion of the fine adjudged against the convict had been ordered to be paid to an informer. If he was furnished with a copy of the judgment at all, it must have been a copy of that rendered March 15, which, as we have seen, adjudged the whole fine to the United States. If he had seen the judgment as it was modified by the order of the next day, which adjudged two hundred and fifty dollars to be for the use of John M. Hewitt, informer, it is not probable that he would have attempted to impair his right; for I find, by consulting the opinions of the attorney-general of the United States, that the power of the president to remit the share of an informer after judgment has never been expressly affirmed, but, on the contrary, frequently doubted, and often denied.

---

---

Let judgment be entered: That out of the money in the registry of the court, in this case, there be paid to the assignee of the informer two hundred and fifty-eight dollars and eighty-seven cents, which is the amount of the sum heretofore adjudged to the informer, with interest from the date of the replevin bond, May 14, until the day the money was paid into the registry of the court.